# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

EUGENIA ARLENE GUNN,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:16-cv-05313-NLH

**OPINION**

---

**APPEARANCES:**

LAUREN S. TOVINSKY
JACOBS SCHWABLE & PETRUZELLI PC
10 MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003
    On behalf of Plaintiff

ANTONIA MARIA ADAM
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123
    On behalf of Defendant

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income

("Social Security benefits") under Title II and Title XVI of the

Social Security Act.  42 U.S.C. § 401, et seq.  The issue before

the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, March 4, 2011.  For the reasons stated below, this Court will affirm that decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On August 18, 2011, Plaintiff, Eugenia Arlene Gunn, who was thirty-nine years old at the time, applied for benefits alleging disability since March 4, 2011.  Plaintiff's impairments include lumbosacral strain, depression, and anxiety.  Plaintiff previously worked as a child care provider.

After the state agency denied Plaintiff's application twice, Plaintiff requested an administrative hearing.  A hearing before an ALJ was held on April 16, 2014.  After the hearing, the ALJ ordered a medical consultative examination, which Plaintiff attended on June 3, 2014.  The ALJ conducted a supplemental hearing on August 20, 2014, and on August 29, 2014, the ALJ issued his decision, which determined that Plaintiff was not disabled.  On April 28, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is

> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review,

a district court is not "empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder."

Williams, 970 F.2d at 1182. However, apart from the substantial

evidence inquiry, a reviewing court is entitled to satisfy

itself that the Commissioner arrived at his decision by

application of the proper legal standards. Sykes, 228 F.3d at

262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a
specific job vacancy exists for him, or whether he would be
hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

The Commissioner has promulgated regulations for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step
process is summarized as follows:

1.  If the claimant currently is engaged in substantial
    gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe
    impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed
    impairment in 20 C.F.R. Part 404, Subpart P, Appendix
    1 and has lasted or is expected to last for a
    continuous period of at least twelve months, the

claimant will be found "disabled."

4.    If the claimant can still perform work he has done in
the past ("past relevant work") despite the severe
impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's
ability to perform work ("residual functional
capacity"), age, education, and past work experience
to determine whether or not he is capable of
performing other work which exists in the national
economy.  If he is incapable, he will be found
"disabled."  If he is capable, he will be found "not
disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

See Wallace v. Secretary of Health & Human Servs., 722 F.2d

1150, 1153 (3d Cir. 1983).  In the first four steps of the

analysis, the burden is on the claimant to prove every element

of his claim by a preponderance of the evidence.  See id.  In

the final step, the Commissioner bears the burden of proving

that work is available for the Plaintiff: "Once a claimant has

proved that he is unable to perform his former job, the burden

shifts to the Commissioner to prove that there is some other

kind of substantial gainful employment he is able to perform."

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v.

Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

   **C.    Analysis**

     At step one, the ALJ found that Plaintiff has not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairment of lumbosacral strain, depression, and anxiety to be
severe.  At step three the ALJ determined that Plaintiff's
severe impairments or her severe impairments in combination with
her other impairments did not equal the severity of one of the
listed impairments.  For step four, the ALJ determined that
Plaintiff's residual functional capacity ("RFC") precluded her
from performing her past work as a child care provider, but that
she was capable of the full range of light, unskilled work (step
five).

     Plaintiff argues that the ALJ erred by (1) failing to
properly evaluate all of Plaintiff's mental impairments when
determining her RFC, (2) failing to appropriately weigh the
medical evidence, including one of Plaintiff's treating
physicians, and (3) improperly disregarded the testimony of
Plaintiff's husband and mother.  In support of her appeal of the
ALJ's decision, Plaintiff argues that the ALJ did not consider
Plaintiff's bipolar disorder, schizoaffective disorder and

attention deficit hyperactivity disorder in assessing

Plaintiff's RFC.  Plaintiff also takes issue with the ALJ's

discussion of the Global Assessment of Functioning ("GAF")

scores assigned to Plaintiff by her medical providers.[1]

Plaintiff further contends that the ALJ improperly weighed the

medical evidence, and particularly erred by discounting the

opinions of Dr. Sastry, one of Plaintiff's treating physicians.

---

[1] As discussed below, over the course of treatment, Plaintiff was
assigned GAF scores of 75, 70, and 45.  The GAF Scale ranges
from zero to one-hundred.  An individual's "GAF rating is within
a particular decile if either the symptom severity or the level
of functioning falls within the range.":

> A GAF of 71-80 is "If symptoms are present, they are
> transient and expectable reactions to psychosocial
> stressors (e.g., difficulty concentrating after family
> argument); no more than slight impairment in social,
> occupational or school functioning (e.g., temporarily
> failing behind in schoolwork)."

> A GAF of 61-70 is "Some mild symptoms (e.g. depressed mood
> and mild insomnia) OR some difficulty in social,
> occupational, or school functioning (e.g., occasional
> truancy, or theft within the household), but generally
> functioning pretty well, has some meaningful interpersonal
> relationships."

> A GAF of 41-50 is "Serious symptoms (e.g.. suicidal
> ideation, severe obsessional rituals, frequent
> shoplifting) OR any serious impairment in social,
> occupational, or school functioning (e.g., no friends,
> unable to keep a job).

American Psychiatric Association, Diagnostic and Statistical
Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM-IV-
TR") p. 34.

Finally, Plaintiff argues that the ALJ failed to consider the testimony of Plaintiff's husband and mother relating to the manifestation of Plaintiff's mental impairments and the affect her impairments had on her ability to function. Because all of Plaintiff's arguments ultimately culminate into a challenge to the ALJ's determination that Plaintiff is capable of performing unskilled work[2] at the light work exertional level[3], the Court will address Plaintiff's arguments collectively.

It is important to reiterate the legal standards governing Plaintiff's appeal. First, in making a RFC determination, the

_____

[2] Unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568.

[3] See 20 C.F.R. §404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions: . . . (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. . . .").

ALJ is required to do the following:

> In determining whether you are disabled, we consider all
> your symptoms, including pain, and the extent to which your
> symptoms can reasonably be accepted as consistent with the
> objective medical evidence and other evidence. By
> objective medical evidence, we mean medical signs and
> laboratory findings . . . . By other evidence, we mean . .
> . statements or reports from you, your treating or
> nontreating source, and others about your medical history,
> diagnosis, prescribed treatment, daily activities, efforts
> to work, and any other evidence showing how your
> impairment(s) and any related symptoms affect your ability
> to work. . . .

20 C.F.R. § 404.1529. The RFC reflects "what [the claimant] can

still do despite [his or her] limitations," 20 C.F.R. §

416.945(a), and the controlling regulations are clear that the

RFC finding is a determination expressly reserved to the

Commissioner, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2),

404.1546(c), 416.946(c).

Second, a treating physician's opinions are entitled to

"great weight," but an ALJ may reduce his reliance upon a

treating physician's opinions if it is inconsistent with other

medical evidence, and if he explains his reasoning. Plummer v.

Apfel, 186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted

to accept or reject all or part of any medical source's opinion,

as long as the ALJ supports his assessment with substantial

evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)

("We are also cognizant that when the medical testimony or

conclusions are conflicting, the ALJ is not only entitled but required to choose between them. . . . [W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."); Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects").

Third, the issue of whether a claimant is "disabled" is reserved for the Commissioner, and a physician's opinion thereon is not entitled to any special significance. See 20 C.F.R. § 404.1527(e).

And fourth, the pinnacle legal principal that applies to the assessment of all of the other standards:  A district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ.  Hartzell v. Astrue, 741 F.Supp.2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).

With these standards in mind, the Court finds that the ALJ did not err as Plaintiff contends, and finds that the ALJ's decision is supported by substantial evidence.  As a primary

matter, Plaintiff does not challenge the ALJ's assessment of her physical impairments. Instead, Plaintiff's arguments focus on the ALJ's consideration of her mental impairments. In that analysis, the ALJ detailed Plaintiff's treatment for her mental impairments that began on March 3, 2011. The medial records show that from March 2011 through October 2011, Plaintiff complained of anxiety, depression, auditory hallucinations, irritability, and fatigue, and was diagnosed with bipolar disorder. By November 2, 2011, however, the medical records show that Plaintiff's treatment and medication regimen had resulted in what Plaintiff's treating physician, Dr. Kammiel, described as a "significant recovery." (R. at 58-59.)

Plaintiff's stable state continued through July 2, 2012, when an agency consultative physician examined her. Dr. Coffey found no evidence of a thought disorder, and noted that she was compliant with Dr. Kammiel's prescribed medications. Dr. Coffey diagnosed Plaintiff with "rule out attention deficit hyperactivity disorder and personality disorder, NOS [not otherwise specified], with borderline features." Dr. Coffey noted that Plaintiff's condition was considered to be behavioral and her difficulties were primarily related to her personality disorder. (R. at 60.) Two months later, Dr. McGarry examined

Plaintiff and found her to be mildly anxious but quite pleasant. (Id.)

In September 2013, Dr. Kammiel examined Plaintiff and learned that Plaintiff had reduced her medication dosage by half. Under that reduced dosage, Plaintiff reported that she was more edgy, easily agitated, unable to cope, moody and overwhelmed. Dr. Kammiel instructed Plaintiff to return to the prescribed dosage of her medication which had been therapeutically effective. (Id.)

By November 2013, Plaintiff reported to another medical provider that she was tolerating her medications, her affect and mood were normal, and her memory was good. (R. at 60-61.) Dr. Kammiel saw Plaintiff again on December 12, 2013, with Dr. Kammiel observing that Plaintiff appeared clean, alert, cooperative, mood was good, she had full range of affect, and she was cooperative with no abnormal psychomotor activity. Dr. Kammiel noted that Plaintiff denied paranoia or hallucinations. Dr. Kammiel determined Plaintiff to be stable and diagnosed Plaintiff with schizoaffective disorder. (R. at 61.)

On March 12, 2014, Plaintiff was examined by a different medical provider, Ms. Hoffman, and reported that she had reduced her medication by half for the past six months. During that

time, Plaintiff reported symptoms similar to the time before she was therapeutically medicated by Dr. Kammiel, and also reported that her marriage was failing. Ms. Hoffman diagnosed Plaintiff with bipolar disorder, psychotic disorder, and anxiety disorder. (Id.) On March 14, 2014, Plaintiff saw Dr. Sastry, who directed her to reduce her current medication dosage and begin on another drug. (Id.)

After relating Plaintiff's mental health treatment, the ALJ noted that while Plaintiff was compliant with the medication prescribed by Dr. Kammiel, Plaintiff's bipolar disorder remained in remission and she did not decompensate. The ALJ further noted that Plaintiff's marital problems and resulting difficulty with her children she experienced by March 2014 reflected a situational element to her increased symptomology, which was compounded by Plaintiff's lack of compliance with her medications. (R. at 64.) The ALJ therefore determined that during this period, Plaintiff must be evaluated as an undertreated patient. The ALJ further noted that Plaintiff had not provided treatment records beyond her initial treatment with Dr. Sastry. Accordingly, the ALJ concluded that the records reflected that Plaintiff "responded positively to previous mental medication treatment regimens in the past with no

objective support in the medical record as a whole for a
conclusion that she would not be responsive in the future."
(Id.)

The ALJ also specifically articulated the weight she
afforded to each medical provider's opinion. (R. at 64-67.)
First, the ALJ noted that over the course of treatment,
Plaintiff was assessed GAF scores of 60-75, which was consistent
to the periods when Plaintiff was compliant with her
medications, and assessed a GAF of 45, which was during the time
Plaintiff was not compliant. The ALJ stated that GAF scores are
a subjective and not objective measure, and the "diagnosis and
assessment of a mental impairment under criteria found in the
DSM-IV are not entitled to great weight in making disability
determinations." The ALJ then assigned great weight to the 60-
75 GAF scores and little weight to the 45 GAF score. (R. at
65.)

Plaintiff takes issue with the ALJ's rejection of using GAF
scores in making disability determinations, but then goes on to
assign levels of weight to the GAF scores. The Court does not
find the ALJ's decision to be in error on this issue. The ALJ
stated that a particular diagnosis under the DSM-IV, which
considers a GAF score as a part of that diagnosis, is not

entitled to great weight – e.g., Plaintiff's varying diagnoses of bipolar disorder and schizoaffective disorder, among others.[4] The ALJ did not say that GAF scores by themselves should not be afforded great weight. Moreover, the ALJ did not accept or reject the GAF scores standing alone, but rather found that assigned GAF scores logically corresponded to Plaintiff's compliance with her medications, and that Plaintiff's condition during her periods of compliance weighed more heavily on the ultimate disability determination than Plaintiff's condition during non-compliance.

Next, the ALJ determined that the opinions of Dr. Coffey and Dr. Kammiel were afforded great weight because they personally examined Plaintiff, Dr. Kammiel was Plaintiff's treating physician for several years, and their opinions were consistent with the record as a whole. (R. at 65-66.) The ALJ then afforded little weight to Dr. Sastry's opinions, who first

---

[4] This also refutes Plaintiff's argument that the ALJ did not properly consider Dr. Coffey's diagnosis "rule out attention deficit hyperactivity disorder and personality disorder, [not otherwise specified] NOS, with borderline features." It is not the name of a specific diagnosis that is relevant to the disability determination, but rather how a person's symptoms affect a person's ability to work. In this case, regardless of whether Plaintiff was diagnosed with bipolar disorder, schizoaffective disorder, ADHD, or a personality disorder, the ALJ determined that Plaintiff's symptoms of her mental impairments were limiting, but not wholly disabling.

saw Plaintiff in March 2014 while she was not in compliance with
Dr. Kammiel's medication regimen, and opined on May 30, 2014
that Plaintiff was unable to engage in full-time work from May
30, 2014 to May 30, 2016.  (R. at 67.)

Plaintiff argues that the ALJ should not have rejected Dr.
Sastry's opinions in favor of Dr. Kammiel's and Dr. Coffey's,
and that the ALJ did not properly explain why he afforded more
weight to the latter two doctors' opinions.  The Court
disagrees.  The ALJ was permitted to reject the opinions of
Plaintiff's treating physician, so long as he explained why.  He
did so here, including fully crediting Plaintiff's prior
treating physician with whom Plaintiff treated for several years
and obtained a "significant recovery."  Additionally, the ALJ
was permitted to afford varying degrees of weight to the medical
evidence, and the ALJ did not err in this regard because he
explained why he weighted the opinions as he did.

After weighing the medical evidence, the ALJ then
determined that Plaintiff retained the following RFC:

> The claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except that she could sit for 5 hours in an 8
> hour work day, stand for 5 hours in an 8 hour work day and
> sit for 5 hours in an 8 hour work day.  She could
> frequently reach, handle, finger, and feel.  She could
> frequently use her bilateral feet to operate foot controls.
> She could frequently climb, balance, stoop, kneel, crouch

and crawl.  She is further limited to unskilled work.
(R. at 67.)

Plaintiff argues that the ALJ did not explain how Plaintiff
is able to perform light work, or why she can perform work that
is unskilled.  Plaintiff contends that the ALJ came to this
conclusion without any discussion of how her various disorders
affect her cognitive and emotional limitations.  Plaintiff
further contends that the ALJ mostly rejected the testimony of
Plaintiff's mother and husband in making Plaintiff's RFC
assessment, and did not articulate why.

The Court does not agree that the ALJ's RFC determination
essentially came out of thin air as argued by Plaintiff.  As
noted above, "light work" only concerns a job's physical
exertional requirements, see 20 C.F.R. § 404.1567, and cognitive
and emotional limitations do not come into play with the
physical exertional considerations.  Plaintiff does not
challenge substantively the ALJ's findings as to Plaintiff's
physical exertional limitations.

As also noted above, unskilled work "is work which needs
little or no judgment to do simple duties that can be learned on
the job in a short period of time."  20 C.F.R. § 404.1568.  The
record evidence detailed in the ALJ's decision does not contain

any indication that Plaintiff's mental impairments imposed a
non-exertional limitation in her ability to perform simple
duties that required little or no judgment.  Indeed, the
evidence shows that she can care for her two children and take
them to activities, shop in stores, prepare some meals, and
perform some household chores.  (R. at 52.)  The ALJ is not
required to perform a function-by-function assessment of
limitations Plaintiff does not have, and Plaintiff fails to
point to any evidence that the ALJ overlooked or discounted
relative to her ability to perform simple tasks.

    Finally, the ALJ properly assessed the testimony of
Plaintiff's mother and husband.  In the ALJ's decision, he
assigned "some credit" to the opinion of Plaintiff's husband and
mother (R. at 56-57), which he discussed earlier in the decision
(R. at 52-54).  Even though the ALJ did not restate every detail
related by Plaintiff's husband and mother, the ALJ was not
required to do so, and he satisfied his burden of showing that
he considered their testimony and articulated the weight he was
affording their testimony.  See Zirnsak v. Colvin, 777 F.3d 607,
612 (3d Cir. 2014) (citing SSR 06-03p) (providing that when
evaluating evidence from non-medical sources such as family or
friends, an ALJ should consider such factors as the nature and

extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence, and in doing so the ALJ must make certain credibility determinations, and a reviewing court defers to the ALJ's assessment of credibility).

## III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled as of March 4, 2011 because Plaintiff retained the ability to perform unskilled light work is supported by substantial evidence. The decision of the ALJ is affirmed.

An accompanying Order will be issued.


Date: __October 23, 2017__              ___s/ Noel L. Hillman___
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.